IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DONALD R. JACKSON,

        Petitioner,                  No. 2:11-cv-3405-LKK-EFB P

   vs.

GARY SWARTHOUT, et al.,         <u>FINDINGS AND RECOMMENDATIONS</u>

        Respondents

_____/

      Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In 1985, petitioner was convicted of second degree murder and was sentenced to 16 years to life in prison. The instant petition challenges the March 9, 2010 decision of the California Board of Parole Hearings ("Board") to defer petitioner's next parole suitability hearing for three years in accordance with Marcy's Law. The petition further alleges that prison officials impermissibly deprived him of work credits that would have reduced his sentence.[1]

/////

---

[1] In his argument headings, petitioner makes references to the Due Process Clause, the Equal Protection Clause, and the Eighth Amendment ban on cruel and unusual punishment. *See* ECF No. 1 at 5. Petitioner, however, does not actually assert a claim for relief under the Eighth Amendment, the Due Process Clause, or the Equal Protection Clause. *Id*. at 1, 12-18.

1

Respondents move to dismiss the amended petition pursuant to Rule 4 of the Rules Governing § 2254 Cases for failure to state a cognizable claim. This court has authority under Rule 4 to dismiss a petition if it "plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." As a corollary to that rule, the court may also consider a respondent's motion to dismiss, filed in lieu of an answer, on the same grounds. *See*, *e.g.*, *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate a motion to dismiss for failure to exhaust state remedies); *White v. Lewis*, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as the procedural vehicle to review a motion to dismiss for state procedural default). For the reasons explained below, the undersigned recommends respondents' motion be granted.

**I.     Ex Post Facto Claim**

Petitioner's first claim for relief is that application of the provisions of California Proposition 9, also known as Marsy's Law, at his 2010 parole hearing violated the Ex Post Facto Clause of the United States Constitution because it increased the deferral period for his next parole suitability hearing and resulted in him serving a longer prison sentence. ECF No. 1 at 5, 12-16. As discussed below, the undersigned finds this claim must be dismissed as moot.

The Constitution provides that "No State shall . . . pass any . . . ex post facto Law." U.S. CONST. art. I, § 10. "The Ex Post Facto Clause of the Constitution prohibits our state and federal governments from retroactively imposing additional punishment for commission of a criminal offense." *American Civil Liberties Union of Nevada v. Masto*, 670 F.3d 1046, 1052 (9th Cir. 2012). A law violates the Ex Post Facto Clause of the United States Constitution if it: (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed. *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). The Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Himes v. Thompson*, 336 F.3d 848, 854 (9th Cir.

1  2003) (quoting *Souch v. Schaivo*, 289 F.3d 616, 620 (9th Cir. 2002)).  *See also Cal. Dep't of*
2  *Corr. v. Morales*, 514 U.S. 499, 504 (1995).  The Ex Post Facto Clause is also violated if: (1)
3  state regulations have been applied retroactively; and (2) the new regulations have created a
4  "sufficient risk" of increasing the punishment attached to the crimes.  *Himes*, 336 F.3d at 854.
5  Courts apply a two-step test to determine whether a newly enacted statute constitutes an
6  additional form of punishment.  *ACLU of Nev.*, 670 F.3d at 1053.  The first step "requires courts
7  to determine whether the legislature intended to impose a criminal punishment or whether its
8  intent was to enact a nonpunitive regulatory scheme."  *Id.*  If the legislature intended to impose
9  merely a civil regulatory regime, the court must determine whether "the law if 'so punitive either
10 in purpose of effect as to negate the State's intention to deem it civil.'"  *Id.*  The retroactive
11 application of a change in state parole procedures violates ex post facto only if there exists a
12 "significant risk" that such application will increase the punishment for the crime.  *See Garner v.*
13 *Jones*, 529 U.S. 244, 259 (2000).

14      Petitioner was convicted and sentenced to sixteen years to life in 1985, twenty-three
15 years prior to the passage of Marsy's Law in November 2008.  Marsy's Law amended California
16 law governing parole deferral periods.  *See Gilman v. Davis*, 690 F. Supp. 2d 1105, 1109–13
17 (E.D. Cal. 2010) (granting plaintiffs' motion for a preliminary injunction enjoining enforcement
18 of Marsy's Law, to the extent it amended former California Penal Code § 3041.5(b)(2)(A)),
19 *rev'd sub nom. Gilman v. Schwarzenegger*, 638 F.3d 1101 (9th Cir. 2011).  Prior to the
20 enactment of Marsy's Law, the Board deferred subsequent parole suitability hearings with
21 respect to indeterminately-sentenced inmates for one year unless the Board determined it was
22 unreasonable to expect that parole could be granted the following year.  If that determination was
23 made, the Board could then defer the inmate's subsequent parole suitability hearing for up to five
24 years.  *See* Cal. Pen. Code § 3041.5(b)(2) (2008).  Marsy's Law, which applied to petitioner at
25 the time of his 2010 parole suitability hearing, amended § 3041.5(b)(2) to impose a minimum
26 deferral period for subsequent parole suitability hearings of three years, and to authorize the

Board's deferral of a subsequent parole hearing for up to seven, ten, or fifteen years. *Id.* § 3041.5(b)(3) (2010).

Petitioner alleges that Marsy's Law violates the Ex Post Facto Clause because, when applied retroactively, it creates a risk of increasing the length of his punishment. *Id*. at 13. Petitioner asks the court to issue a writ of habeas corpus. However, even if the court found that the Board's 2010 three-year deferral of petitioner's next parole suitability hearing violated the Ex Post Facto Clause, petitioner would not be entitled to an order directing respondents to release him from prison. His Ex Post Facto claim concerns only the timing of petitioner's next parole suitability hearing, and success on that claim would only result in a new hearing at an earlier date. It would not necessarily result in a determination that petitioner is suitable for release from custody on parole. Rather, petitioner's equitable relief would be limited to an order directing the Board to conduct the new parole suitability hearing and enjoining the Board from enforcing against petitioner any provisions of Marsy's Law found to be unconstitutional.

The court, however, lacks the ability to provide petitioner effective relief on this claim. On July 22, 2013, petitioner filed with the court a notice of change of address. ECF No. 16. In this document, petitioner explains that he was granted parole and was released from prison on July 10, 2013. *Id.* As petitioner has already received a subsequent parole consideration hearing, at which he was found suitable for parole, issuance of the writ will not provide petitioner relief on this claim. Accordingly, petitioner's Ex Post Facto claim must be dismissed as moot. *See Caswell v. Calderon*, 363 F.3d 832, 837 (9th Cir. 2004) (finding the petitioner's ex post facto claim moot where the court could not provide any effective relief).

## II.     Good-Time Credits Claim

Petitioner further argues that prison officials denied him "26 years worth of half-time and one-third [time] credits . . . ." ECF No. 1 at 17. He claims that the credits he was denied would have reduced his minimum eligible parole date and his parole release date. Petitioner's claim lacks merit.

4

1    In California, the California Department of Corrections and Rehabilitation ("CDCR") calculates an inmates minimum eligible parole date ("MEPD") and the Board of Parole Hearings ("Board") determines the amount of time an inmate must serve prior to release on parole. *See* Cal. Code Regs. tit. 15, § 2400. An inmate's MEPD is established by statute, and may be reduced by "good conduct" credits. Cal. Code Regs. tit. 15, § 2400. Inmates receive their initial parole hearing one year before the MEPD, and they continue to receive parole hearings until they are found suitable for parole. Cal. Code Regs. tit. 15, § 3041(a).

Once an inmate has been found suitable for parole, the Board determines the length of time a prisoner must serve prior to actual release on parole by setting a base term and then adjusting the term by accounting for aggravating or mitigating circumstances. *Id*. at §§ 2400, 2403-2409. The Board then determines the amount of "postconviction" credits an inmate should be granted, which reduces the length of time the inmate must serve. *Id*. at §§ 2403, 2410.

In 1985, petitioner was sentenced to 15 years to life for second degree murder pursuant to California Penal Code section 190. ECF No. 1 at 1. He also received a one year enhancement for the use of a knife. *Id*. Petitioner's indeterminate sentence permitted him to earn good-time credits.[2] *See* Cal. Code Regs. tit. 15, § 2410. However, even assuming that petitioner has acquired good-time credits during his time in prison and that the CDCR erred in applying petitioner's credits in calculating petitioner's MEPD, such an error would not have impacted the duration of petitioner's sentence. *See* Cal. Code Regs. tit. 15, § 2400 ("The department will determine the minimum eligible parole date. The length of time a prisoner must serve prior to actual release on parole is determined by the board."). At the time of the 2010 parole hearing, petitioner had already passed his MEPD, having served 25 years of his 15 to life sentence at the time of the 2010. *See* ECF No. 1 at 44 (reflecting that petitioner reached his MEPD on August

---

[2] At the time petitioner was sentenced, California Penal Code section 190(a), under which petitioner was sentenced, permitted inmates serving indeterminate life sentences for second degree murder to be eligible to earn good conduct credits toward their sentences. *In re Dayan*, 231 Cal. App. 3d 184, 188.

5

1  15, 1994). Petitioner remained in prison after the 2010 suitability hearing, not because of any
2  error in calculating credits, but because of the Board's finding that he was unsuitable for parole.[3]
3        Furthermore, calculation of petitioner's credits at his 2010 parole hearing would have
4  been meaningless as petitioner was found unsuitable for parole. *See* Cal. Penal Code § 3041 (b)
5  (stating that parole date cannot be fixed where the Board finds the inmate unsuitable for parole);
6  Cal. Code Regs. tit. 15, §§ 2402(a) ("Regardless of the length of time served, a life prisoner shall
7  be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose
8  an unreasonable risk of danger to society if released from prison"); *see also Cole v. Horel*, No.
9  CIV S-06-850 MCE GGH P, 2007 WL 2221060, *4 (E.D. Cal. Aug. 1, 2007) ("if a prisoner's
10 incarceration time passes his MEPD, and he has yet to be found *eligible for parole*, computation
11 of time credits is meaningless-he will be released if and when found eligible, and then only after
12 a computation of a release date under Board matrices") (emphasis in original).
13       Thus, petitioner is not entitled to relief on his this claim.
14 /////
15 /////
16 /////

---

[3] Petitioner does not explicitly assert a claim challenging the Board's 2010 denial of parole. However, attached to the petition is a copy of the typed state habeas petition he submitted to the California Supreme. That petition contains a handwritten note stating that "there is not some evidence to deny parole." ECF No. 1 at 16. To the extent petitioner intended to assert a due process claim challenging the parole denial, such a claim must be rejected. According to the United States Supreme Court, federal habeas review of a parole denial is limited to the narrow question of whether a petitioner has received "fair procedures." *Swarthout v. Cooke*, ___ U.S. ___, 131 S.Ct. 859, 862 (2011). In other words, a federal court may only review whether a petitioner has received a meaningful opportunity to be heard and a statement of reasons why parole was denied. *Id.* at 862-63 (federal due process satisfied where petitioners were "allowed to speak at their parole hearings and to contest the evidence against them, were afforded access to their records in advance, and were notified as to the reasons why parole was denied").
    The petition reveals that petitioner had the opportunity to appear before the Board, but declined to do so. Instead, counsel appear on his behalf. Furthermore, the record reflects that petitioner was provided the reasons parole was denied. ECF No. 1 at 49, 65-70. As petitioner received all the process that was due, to the extent he asserts a due process claim, the claim fails.

### III. Conclusion

Based on the foregoing, it is hereby RECOMMENDED that:

1. Respondents' motion to dismiss, ECF No. 13, be granted;

2. The petition be dismissed; and

3. The Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: August 15, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

7